# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 23-05024-CR-SW-MDH** |
| | ) | |
| **JOSE NAVARRETE-HERNANDEZ,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

This matter came before the Court for a bench trial on May 12, 2025. The Government brought five counts against Defendant stemming from alleged violations of 21 U.S.C. § 841(a)(1) and (b)(1)(C), 18 U.S.C. § 924(c)(1)(A), 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(8), 18 U.S.C. §§ 922(k) and 924(a)(1)(B), and 8 U.S.C. § 1325(a). Defendant was present with counsel and provided a Spanish interpreter. Upon careful review of the evidence as presented by the parties, the Court finds Defendant guilty and issues these findings of fact and conclusions of law pursuant to Fed. R. Crim. P. 23(c).

## I.  Background

On May 11, 2023, Sargent Tinnin conducted a traffic stop of a 1999 gray F-250 Ford truck ("Ford truck") bearing Texas license plate HSC8548 being driven and solely occupied by the Defendant in Carthage, Missouri. During the traffic stop, Sargent Tinnin arrested the Defendant on charges of driving without a license, without insurance, and expired plates. Carthage, Missouri Police Officer Kennedy Chaligoj conducted an inventory search of the truck. During the inventory search, Officer Chaligoj found a black backpack in the truck. Inside the backpack were two drug

1

scales, two glass pipes with a white powdery residue, and two key holders and a magnetic container containing approximately 145 blue pills with the imprint "M" on one side and "30" on the other side. Officer Chaligoj also found inside the backpack a Heritage, model Rough Rider, .22 caliber revolver, bearing serial number 1BH431050, that was missing the handle, and a Social Security card in the name of "Jose Hernandes." Sargent Tinnin located a Raven, model P-25, .25 caliber pistol, with an obliterated serial number, behind the center console of the truck. The pills underwent chemical analysis where it was found each pill contained .12 grams of fentanyl, a Schedule II controlled substance.

## II.    Stipulation of Facts

The parties stipulated that prior to and on May 11, 2023, the Defendant knew he was an alien (meaning that he was not a citizen or national of the United States), that he had knowingly entered the United States at a place other than a designated port of entry, and that he was illegally and unlawfully present in the United States. (Government's Exhibit 41).

The parties further stipulated that there is no dispute as to the admission that the chain-of-custody was complete and uncompromised as to Government's Exhibit 8, a Raven, model P-25, .25 caliber pistol, with an obliterated serial number; Exhibit 14, a Heritage, model Rough Rider, .22 caliber revolver, bearing serial number 1BH431050; and Exhibit 21, fentanyl pills. (Government's Exhibit 42). Additionally, it was stipulated that one of the approximately 145 blue tablets, containing imprints of "M" and "30," located in a backpack and marked as Government's Exhibit 21, underwent chemical analysis at the Missouri State Highway Patrol Crime Laboratory. (Government's Exhibit 43). The chemical analysis revealed that the one tablet weighed approximately .12 gram and contained fentanyl (N-[1-(2-phenylethyl)-4-prompanamide), a Schedule II controlled substance. *Id*.

Lastly, it is stipulated by the parties that the Heritage, model Rough Rider, .22 caliber revolver, bearing serial number 1BH431050, and the Raven, model P-25, .25 caliber pistol, with an obliterated serial number, located in, and seized from, a Ford truck the Defendant was driving, following the traffic stop on or about May 11, 2023, in Jasper County, Missouri, as marked as Government's Exhibits 8 and 14, were not manufactured in the State of Missouri and had been transported across a state line prior to May 11, 2023. (Government's Exhibit 44).

## III.    Admitted Exhibits

The following evidence was offered and admitted without objection during the May 12, 2025, bench trial.

1.    Exhibit 1 – Photo – Front of Ford truck

2.    Exhibit 2 – Photo – Side of Ford truck

3.    Exhibit 3 – Photo – Back of Ford truck

4.    Exhibit 4 – Photo – Back of Ford truck

5.    Exhibit 5 – Photo – Driver's side of Ford truck with open door

6.    Exhibit 6 – Photo – Front seats of Ford truck and backpack

7.    Exhibit 7 – Photo – Back seats of Ford truck

8.    Exhibit 8 – Raven, model P-25, .25 caliber pistol, with an obliterated serial number

9.    Exhibit 9 – Photo – Raven firearm with holster

10.    Exhibit 10 – Photo – Raven firearm

11.    Exhibit 11 – Photo – Raven firearm with closeup of logo

12.    Exhibit 12 – Photo – Raven firearm with closeup of barrel

13.    Exhibit 13 – Photo – Raven firearm with ammunition

3

14.     Exhibit 14 – Heritage, model Rough Rider, .22 caliber revolver, bearing serial number 1BH431050

15.     Exhibit 15 – Photo – Heritage firearm

16.     Exhibit 16 – Two glass pipes with white residue & two drug scales

17.     Exhibit 17 – Photo – two glass pipes

18.     Exhibit 18 – Photo – large drug scale

19.     Exhibit 19 – Photo – smaller drug scale

20.     Exhibit 20 – Photo – smaller drug scale without cover

21.     Exhibit 21 – Fentanyl pills

22.     Exhibit 22 – Photo – Fentanyl pills in two keyholders and a black case

23.     Exhibit 23 – Photo – Fentanyl pills

24.     Exhibit 24 – Social Security card in the name of "Jose Hernandes"

25.     Exhibit 25 – Photo – Social Security card in name of "Jose Hernandes"

26.     Exhibit 26 – .25 ammunition from Raven firearm, .25 ammunition box

27.     Exhibit 27 – .380 ammunition

28.     Exhibit 30 – Passport of Defendant

29.     Exhibit 31 – Notebook of Defendant

30.     Exhibit 32 – Certificate of Absence of Immigration Records _ Jose Navarrete-Hernandez

31.     Exhibit 34 – Curriculum Vitae – Homeland Security Investigations Special Agent David Muir

32.     Exhibit 35 – Public Record Certificate – Jasper County Detention Center Records re Victor Navarrete Hernandez

33.     Exhibit 36 – Business Record Certificate – Jasper County Detention Center Records re Victor Navarrete Hernandez

4

34.    Exhibit 37 – Jasper County Detention Center Records to Victor Navarrete Hernandez

35.    Exhibit 38 – Public Record Certificate – Texas Department of Motor Vehicles

36.    Exhibit 39 – Business Record Affidavit – Texas Department of Motor Vehicles

37.    Exhibit 40 – Texas Department of Motor Vehicles Registration Records for Texas License Plate HSC8548

38.    Exhibit 41 – Stipulation Regarding Alien Status

39.    Exhibit 42 – Stipulation Regarding Chain of Custody and Admission of Drug and Firearms Exhibits

40.    Exhibit 43 – Stipulation Regarding Drug Exhibit

41.    Exhibit 44 – Stipulation Regarding Interstate Nexus of Firearms

The following evidence was offered and admitted over objection during the May 12, 2025, bench trial.

1.    Exhibit 28 – Photo – multiple baggies with white substance and black case

2.    Exhibit 29 – Photo – blue baggie with white substance

## IV.    Witness Testimony

### a.    Sargent Damion Tinnin – Government's Witness

Sargent Damion Tinnin of the Carthage Police Department testified that he was familiar with Defendant as he had no less than five contacts with Defendant prior to the May 11, 2023, arrest. Sargent Tinnin testified that in March of 2022 he observed Defendant driving a 2001 GMC Sierra pickup truck ("GMC Sierra"). During the March 2022 incident Sargent Tinnin testified that he knew Defendant did not have a license and noted an additional temporary tag. Sargent Tinnin then pulled over Defendant in Jasper County, Missouri where he additionally observed a female passenger. Sargent Tinnin testified he arrested Defendant based on a forged temporary tag and

5

driving without a license. Sargent Tinnin then stated he and Sargent Brian Adams conducted an inventory search of the GMC Sierra where they found a black box in the center console with 10 baggies having white powdered residue. (Government's Exhibits 28-29). Sargent Tinnin testified he believe the white powered to contain methamphetamine.

Testimony was added detailing a September 5, 2022, incident where Sargent Tinnin testified he observed Defendant's brother, Victor Navarrete-Hernandez airing up a bike tire. Sargent Tinnin stated that Victor Navarrete-Hernandez was subsequently arrested and called Defendant to pick up the truck. Defendant than drove the truck away. Sargent Tinnin testified that at the time they were unaware that Defendant had an outstanding warrant and then Sargent Adams was sent to locate and arrest the Defendant. Sargent Tinnin stated that Sargent Adams had located the Defendant, did a search of Defendant's person and found a baggie of white crystal methamphetamine to which Defendant had responded "mine". Sargent Tinnin testified that Defendant did not request a translator during any of his prior interactions and spoke English during each event.

On May 11, 2023, Sargent Tinnin effectuated a traffic stop on the Ford truck with a large cattleguard bearing Texas license plate HSC8548. Sargent Tinnin had run the license plate, noted the license plate was expired, and that Defendant was operating the vehicle without a license, and stopped the vehicle. No other person was in the truck. Defendant spoke English during the stop and provided an El Salvadorian passport to Sargent Tinnin. Sargent Tinnin testified he requested backup and asked Defendant to step out of the vehicle. Sargent Tinnin found nothing when searching Defendant's person. Sargent Tinnin testified that Defendant consented to a search of his person. Sargent Tinnin then asked if Defendant had any guns to which Defendant responded he did not have guns. Sargent Tinnin then stated Defendant asked for a translator. Sargent Tinnin

arranged for police translator over the phone to which Defendant refused and requested a translator in person. Defendant was then arrested for charges of driving without a license, without insurance, and expired plates.

Sargent Tinnin testified Officer Kennedy Chaligoj started an inventory search that he also participated in at a later time. Sargent Tinnin testified that Officer Chaligoj found a black backpack in the rear of the truck cab. In the black backpack was a Heritage, model Rough Rider, .22 caliber revolver, bearing serial number 1BH431050 missing its handle (Government's Exhibit 15); two drug scales (Government Exhibits 18-20); two glass pipes with white residue (Government's Exhibit 17); two keyholders and a black case containing approximately 145 blue tablets, containing imprints of "M" and "30," (Government's Exhibits 22-23); a social security card in the name of "Jose Hernandes" (Government's Exhibits 24-25); the El Salvadorian passport of Defendant (Government's Exhibits 30-31); and .25 and .380 ammunition (Government's Exhibits 26-27). Sargent Tinnin stated he found a Raven firearm in the rear of the cab of the truck. (Government's Exhibits 9-13).

Sargent Tinnin testified that Defendant was booked and read his Miranda rights after which Defendant agreed to speak. Sargent Tinnin stated he asked about the guns, to which Defendant vaguely stated that in 2018 the Courts said he could not have a gun. Sargent Tinnin also asked Defendant about the use of drugs to which Defendant stated he does not do drugs. Sargent Tinnin testified that the traffic stop and the interview with Defendant in custody were both recorded but was unsure of what happened with the footage afterward.

Lastly, Sargent Tinnin testified that in February of 2025 he had gone to the tow yard where the Ford truck Defendant had been driving was being stored. He did so on in response to discovery requests from Defendant's counsel. There Sargent Tinnin obtained the El Salvadorian Passport

still in the truck and, for the first time, discovered a black notebook that had not been seized prior. (Government's Exhibit 31). No photographs or video were taken when retrieving these items from the Defendant's vehicle.

### b. Officer Kennedy Chaligoj – Government's Witness

Officer Kennedy Chaligoj of the Carthage Police Department testified that she assisted with the traffic call on May 11, 2023, and was asked to assist with the inventory of Defendant's vehicle. Officer Chaligoj stated that Defendant had been transported from the scene when she arrived. During the inventory search Officer Chaligoj stated she found a black backpack behind the center console in the cab of Defendant's truck. Inside the backpack Officer Chaligoj found a Heritage, model Rough Rider, .22 caliber revolver, bearing serial number 1BH431050 missing its handle (Government's Exhibit 15); two drug scales (Government Exhibits 18-20); two glass pipes with white residue (Government's Exhibit 17); two keyholders and a black case containing approximately 145 blue tablets, containing imprints of "M" and "30," (Government's Exhibit 22-23); a social security card in the name of "Jose Hernandes" (Government's Exhibit 24-25); the El Salvadorian passport of Defendant (Government's Exhibits 30-31); and .25 and .380 ammunition (Government's Exhibits 26-27).

Officer Chaligoj stated she believed that the residue on the pipes to be methamphetamine and the pills to be controlled substance. Officer Chaligoj stated that all of the items in the black backpack, including the backpack were seized on May 11, 2023, except for the passport. Officer Chanligoj testified she could not recall why the passport was not seized. Officer Chaligoj stated she did not search the toolbox located on the back of the cab of the truck.

### c. Sargent Brian Adams – Government's Witness

Sargent Brian Adams of the Carthage Police Department testified he had interacted with Defendant on five to ten different occasions. Sargent Adams testified that on March 15, 2022, he had contact with Defendant who was operating a 2001 GMC Sierra. Sargent Adams stated it was his understanding that Defendant owned the vehicle. Sargent Adams conducted an inventory search of the vehicle where he stated he found 10 baggies, one of which contained a traceable amount of methamphetamine.

Sargent Adams next testified as to events of September 5, 2022. Sargent Adams testified that Victor Navarrete-Hernandez was arrested, and Defendant was called to take possession of the Ford truck. Sargent Adams later learned that Defendant had an active arrest warrant, and he went to make a second contact with Defendant. Sargent Adams then arrested Defendant based on the existing arrest warrant where Sargent Adams performed a search of Defendant's person. Sargent Adams testified he found a small baggie of crystalized methamphetamine in Defendant's right quarter pocket. Sargent Adams stated he showed Defendant the baggie to which Defendant stated "mine". Sargent Adams testified the truck was not seized or towed at during this incident.

Sargent Adams stated that he saw Defendant operate the Ford truck approximately five times between September 5, 2022, and May 11, 2023. On May 11, 2023, Sargent Adams testified he responded to a call for backup on a traffic stop of Defendant. Sargent Adams stated that in his prior interactions with Defendant he spoke English and that during the current stop he also conversated with Defendant in English. Sargent Adams noted he found it unusual that Defendant had requested an interpreter during this traffic stop. Sargent Adams testified that telephone is regularly used for translators in these circumstances and that the Defendant became agitated that an in-person interpreter was not provided. Sargent Adams then took Defendant into custody.

### d. Special Agent David Muir – Government's Witness

Special Agent David Muir of the Homeland Security Investigations testified about his experiences in investigating crimes involving street level narcotics, international supply and distribution, and as a firearms instructor. Special Agent Muir testified that an individual drug user would typically have in his possession five pills or less. Special Agent Muir also testified that the most common items he sees for distribution are scales and little containers such as Ziplock bags or baggies. Special Agent Muir reviewed Government's Exhibits 22 and 23 and testified that 147 pills is a distributive quantity of fentanyl to which he testified is indicative of drug distribution. Special Agent Muir stated that in May of 2023 the pills would sell from anywhere between 15 to 45 dollars per pill, with the average being 30 dollars per pill.

Special Agent Muir testified about the role of firearms in relation to drug distribution. Special Agent Muir testified that firearms are used to help with self-defense, enforce the criminal enterprise, as well as a status symbol and of wealth. Special Agent Muir also testified that when examining a firearm, you need to see if an instrument is capable of the design and the explosive function of the ballistic. Special Agent Muir performed a function test of both guns in anticipation of this proceeding. He testified that both weapons would meet the definition of firearms, and both firearms would function. Specifically, as to the Heritage firearm, Special Agent Muir testified that he observed the rubber bands, and that the bottom half of the receiver and the handle had been removed. He stated that the firearm would function just fine, and it was his opinion it was modified for concealment purposes. Special Agent Muir also testified that he found that the body cam footage from May 11, 2023, was not available and was not reviewed prior to trial. Special Agent Muir further testified that there was not a substantial amount of cash recovered during the investigation and was not aware of any debt ledgers or any case recovered at all, aside from the two dollars that were in the planner.

**FINDINGS**

While the Court was still able to make its findings of fact and law in the case based on the evidence proffered at trial, the Court would be remiss not to point out the deficiencies in the Carthage Police Department's handling in this matter. First, the Court makes note that what might have been a routine case was made more difficult by the failings of the Cathage Police Department's handling of the evidence in this case.

The camera footage relating to the traffic stop, and video of the booking, and in custody interview of Defendant would almost certainly have shed clarity on areas of dispute in the case. Additionally, the failure to photograph before and after the inventory search of Defendant's vehicle, what would seem to be a routine practice, created issues during trial with respect to where the black backpack and Raven firearm were located within the Ford truck. The Carthage Police Department also failed to test for fingerprints or DNA as it related to the evidence found within the black backpack which addressed the issue of Defendant's possession. Lastly, the members of the Carthage Police Department failed to seize Defendant's El Salvadorian Passport and failed to inventory or find a black planner that was recovered into evidence only after an information request from the Defense Attorney. These seizures came approximately 22 months after the initial May 11, 2023, incident.

Despite the failures of the Carthage Police Department and based on the bench trial held on May 12, 2025, the Court issues its findings of fact, as described below, based on the relevant testimony and evidence presented to the Court of the underlying incidents in Jasper County, Missouri.

**I.      Count I – Possession of a Schedule II Controlled Substance with Intent to Distribute**

11

Based on the evidence presented, the Court finds Defendant is guilty beyond a reasonable doubt of Count I – Possession of a Schedule II Controlled Substance with Intent to Distribute in Violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). To be guilty of the crime of distributing a mixture or substance containing a detectable amount of N-[1-(2-phenylethyl)-4-piperidinyl] prompanamide (fentanyl), a schedule II controlled substance the Government must prove beyond a reasonable doubt that: (1) the defendant was in possession of the mixture or substance containing a detectable amount of fentanyl; (2) the defendant knew that he was in possession of the mixture or substance containing a detectable amount of fentanyl; and (3) the defendant intended to distribute some or all of the mixture or substance containing a detectable amount of fentanyl to another person. *See* 8th Cir. Crim. Jury Instr. § 6.21.841A.

The Court finds that Defendant was in possession of the mixture or substance containing a detectable amount of fentanyl. Possession can be actual or constructive. *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004) (citing *United States v. Ojeda*, 23 F.3d 1473, 1475 (8th Cir. 1994). Actual possession is the knowing, direct, and physical control over a thing. *Id*. "[C]onstructive possession requires knowledge of an object, the ability to control it, and the intent to do so." *Id*. (quoting *United States v. Lee*, 356 F.3d 831, 837 (8th Cir. 2003).

Government Exhibit 40, a title history produced by the Texas Department of Motor Vehicles, showed that the 1999 gray F-250 Ford truck belonged to Defendant's brother, Victor Navarrete Hernandez. However, Government's Exhibit 37 showed that Victor Navarrette Hernandez was in custody in the Jasper County Detention Center from April 2, 2023, to May 15, 2023, giving Defendant access to the Ford truck. Testimony from Sargent Tinnin and Officer Chaligoj showed that the fentanyl pills were located in a black backpack found in the back cab of Defendant's Ford truck. At the time of the arrest Defendant was the driver and only individual in

the truck. Defendant had exclusive access to the black backpack and the contents inside. Additionally, it was stipulated that one of the approximately 145 blue tablets, containing imprints of "M" and "30," located in a backpack and marked as Government's Exhibit 21, underwent chemical analysis at the Missouri State Highway Patrol Crime Laboratory. (Government's Exhibit 43). The chemical analysis revealed that the one tablet weighed approximately .12 gram and contained fentanyl (N-[1-(2-phenylethyl)-4-prompanamide), a Schedule II controlled substance. *Id*. The Government has satisfied its burden as to the first element.

The Court additionally finds that the Defendant knew he was in possession of the mixture or substance containing a detectable amount of fentanyl. As stated above, Defendant had exclusive access to the truck and the black backpack. Testimony from Officer Chaligoj established the backpack had various items belonging to Defendant including his El Salvadorian Passport and a social security card with the name "Jose Hernandes". Testimony from Sargent Tinnin established that Defendant had produced his El Salvadorian Passport upon request of Sargent Tinnin during the May 11, 2023, traffic stop and was later found in the black backpack by Officer Chaligoj further showing Defendant not only had access to the black backpack but was using it for personal use. By virtue of Defendant's exclusive use of the black backpack as well as multiple items belonging to Defendant, The Court finds that Defendant had knowledge he was in possession of the mixture or substance containing a detectable amount of fentanyl. The Government has satisfied its burden as to the second element.

Lastly, the Court finds that the Defendant intended to distribute some or all of the mixture or substance containing a detectable amount of fentanyl to another person. Defendant was found to have 145 pills contained within two keyholders and a black case. (Government's Exhibit 22). The testimony of Special Agent Muir demonstrated that users typically would have five pills or

13

less on their person, while distributors would have a larger quality, indicating an intent to distribute. Further, Special Agent Muir testified that items such as scales and small containers were also indictive of drug distribution. Testimony from Sargent Tinnin and Sargent Adams also highlighted that prior to the instant offence, Defendant on March 15, 2022, had in his possession multiple baggies with white substances believed to have been methamphetamine. (Government's Exhibits 28 and 29). This testimony, as well as the photo exhibits, show a pattern indictive of drug distribution rather than of use. This is further highlighted by testimony from Sargent Tinnin asked Defendant about his use of drugs after Defendant waived his Miranda rights and stated that he did not use drugs. The Government has satisfied its burden as to the third element.

The Court finds Defendant Guilty of Count I – Possession of a Schedule II Controlled Substance with Intent to Distribute. The Government has satisfied its burden to prove the elements of the crime of possession of a Schedule II controlled substance with intent to distribute beyond a reasonable doubt.

## II. Count II – Possession of a Firearm in Furtherance of a Drug Trafficking Crime

Based on the evidence presented, the Court finds Defendant is guilty beyond a reasonable doubt of Count II – Possession of a Firearm in Furtherance of a Drug Trafficking Crime in Violation of 18 U.S.C. § 924(c)(1)(A). To be guilty of the crime of possession of a firearm in furtherance of a drug trafficking crime the Government must prove beyond a reasonable doubt that: (1) the defendant committed the crime of possessing a Schedule II controlled substance with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) as charged in count I of the indictment; and (2) the defendant knowingly possessed a firearm in furtherance of that crime. *See* 8th Cir. Crim. Jury Instr. § 6.18.924C-1.

14

The Court finds the Defendant committed the crime of possessing a Schedule II controlled substance with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). As previously discussed above, the Court finds the Government has proved beyond a reasonable doubt that Defendant has committed the crime of possessing a Schedule II controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). The Government has satisfied its burden as to the first element.

The Court also finds that the Defendant knowingly possessed a firearm in furtherance of that crime. Testimony from Sargent Tinnin and Officer Chaligoj showed a Heritage, model Rough Rider, .22 caliber revolver, bearing serial number 1BH431050 being found within the black backpack amongst Defendant's El Salvadorian Passport and a social security card with the name "Jose Hernandez". The black backpack also contained instrumentalities indicative of drug distribution including 145 fentanyl pills, two sets of scales, and two glass pipes with white residue. (Government's Exhibits 16-19, 22-23). Sargent Tinnin also testified that he found the Raven firearm within the back cab of the Ford truck Defendant was the sole occupant of. Defendant had access and control over the contents of the truck and black backpack. Special Agent David Muir testified that both weapons would meet the definition of firearms, and both firearms would function. Special Agent Muir also testified that firearms are used to help with self-defense, enforce the criminal enterprise, as well as a status symbol and of wealth. Given the Defendant having access and possession of the firearms, the functioning of the firearms, the indica of drug distribution paraphernalia, and the amount of fentanyl pills, the Court finds that Defendant knowingly possessed a firearm in furtherance of that crime. The Government has satisfied its burden as to the second element.

15

The Court finds Defendant Guilty of Count II – Possession of a Firearm in Furtherance of a Drug Trafficking Crime. The Government has satisfied its burden to prove the elements of the crime of possession of a firearm in furtherance of a drug trafficking crime beyond a reasonable doubt.

### III.     Count III – Possession of a Firearm by an Illegal Alien

Based on the evidence presented, the Court finds Defendant is guilty beyond a reasonable doubt of Count III – Possession of a Firearm by an Illegal Alien in Violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(8). To be guilty of the crime of possession of a firearm by an illegal alien the Government must prove beyond a reasonable doubt that: (1) the defendant was an alien illegally or unlawfully in the United States; (2) the defendant knowingly possessed a firearm, to wit a Heritage, model Rough Rider, .22 caliber revolver, bearing serial number 1BH431050, and/or a Raven, model P-25, .25 caliber pistol, with an obliterated serial number; (3) at the time the defendant knowingly possessed the firearms, he knew he was an alien illegally or unlawfully in the United States; and (4) the firearm was transported across a state line at some time during or before the defendant's possession of it. *See* 8th Cir. Crim. Jury Instr. § 6.18.922A.

The Court finds that the Defendant was an alien illegally or unlawfully in the United States. The parties stipulated that prior to and on May 11, 2023, the Defendant knew he was an alien (meaning that he was not a citizen or national of the United States), that he had knowingly entered the United States at a place other than a designated port of entry, and that he was illegally and unlawfully present in the United States. (Government's Exhibit 41). The Government has satisfied its burden as to the first element.

The Court also finds that the Defendant knowingly possessed a firearm. Testimony from Sargent Tinnin and Officer Chaligoj showed a Heritage, model Rough Rider, .22 caliber revolver,

bearing serial number 1BH431050 being found within the black backpack amongst Defendant's El Salvadorian Passport and a social security card with the name "Jose Hernandez". Sargent Tinnin also testified that he found the Raven firearm within the back cab of the Ford truck Defendant was the sole occupant of. Defendant had access and control over the contents of the truck and black backpack. Special Agent David Muir testified that both weapons would meet the definition of firearms, and both firearms would function. The Defendant having access and possession of the firearms, the functioning of the firearms, and found with other items specifically belonging to Defendant find that Defendant knowingly possessed a firearm. The Government has satisfied its burden as to the second element.

The Court finds at the time the Defendant knowingly possessed the firearms, he knew he was an alien illegally or unlawfully in the United States. As discussed above, the parties have stipulated that prior to and on May 11, 2023, the Defendant knew he was an alien (meaning that he was not a citizen or national of the United States). The Government has satisfied its burden as to the third element.

The Court finds that the firearm was transported across a state line at some time during or before the defendant's possession of it. It was stipulated by the parties that the Heritage, model Rough Rider, .22 caliber revolver, bearing serial number 1BH431050, and the Raven, model P-25, .25 caliber pistol, with an obliterated serial number, located in, and seized from, a Ford truck the Defendant was driving, following the traffic stop on or about May 11, 2023, in Jasper County, Missouri, as marked as Government's Exhibits 8 and 14, were not manufactured in the State of Missouri and had been transported across a state line prior to May 11, 2023. (Government's Exhibit 44). The Government has satisfied its burden as to the fourth element.

The Court finds Defendant Guilty of Count III – Possession of a Firearm by an Illegal Alien. The Government has satisfied its burden to prove the elements of the crime of possession of a firearm by an illegal alien beyond a reasonable doubt.

## IV.    Count IV – Possession of a Firearm with Obliterated Serial Number

Based on the evidence presented, the Court finds Defendant is guilty beyond a reasonable doubt of Count IV – Possession of a Firearm with Obliterated Serial Number in Violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B). To be guilty of the crime of possession of a firearm with obliterated serial number the Government must prove beyond a reasonable doubt that: (1) the defendant knowingly possessed and received a firearm, that is, a Raven, model P-25, .25 caliber piston; (2) that had been shipped and transported in interstate commerce; (3) from which the manufacturer's and importer's serial number had been removed, altered, and obliterated; (4) as defendant knew.

The Court finds that the Defendant knowingly possessed and received a firearm. Sargent Tinnin testified that he found the Raven firearm within the back cab of the Ford truck Defendant was the sole occupant of. Testimony from Sargent Tinnin and Officer Chaligoj showed other items inside the truck were also items that specifically belonged to Defendant including his El Salvadorian passport and a social security card in the name of "Jose Hernandes". Defendant had access and control over the contents of the truck and items located in it. Special Agent David Muir testified that the Raven firearm would meet the definition of a firearm and would function as intended. The Defendant having access and possession of the firearm, the functioning of the firearm, and found with other items specifically belonging to Defendant find that Defendant knowingly possessed and received a firearm. The Government has satisfied its burden as to the first element.

The Court additionally finds that the firearm had been shipped and transported in interstate commerce. It was stipulated by the parties that the Raven, model P-25, .25 caliber pistol, with an obliterated serial number, located in, and seized from, a Ford truck the Defendant was driving, following the traffic stop on or about May 11, 2023, in Jasper County, Missouri, as marked as Government's Exhibits 8, were not manufactured in the State of Missouri and had been transported across a state line prior to May 11, 2023. (Government's Exhibit 44). The Government has satisfied its burden as to the second element.

The Court further finds that the Raven, model P-25, .25 caliber pistol had the manufacturer's and importer's serial number had been removed, altered, and obliterated. The Government produced the Raven, model P-25, .25 caliber pistol at trial, as marked as Government's Exhibit 8, which showed the obliterated serial number. Additionally, Government's Exhibit 12 shows a closeup of the back of the Raven firearm, where the serial number would be located, which shows the serial number etched off in its entirety. The Government has satisfied its burden as to the third element.

Lastly, the Court finds that Defendant knew the manufacturer's and importer's serial number had been removed, altered, and obliterated. As stated above, the evidence shows Defendant had access and possession to the Raven firearm located in the back cab of the Ford truck. Government's Exhibit 12 shows a closeup of the back of the Raven firearm, which shows a large etched off portion where the serial number would be on the back of the firearm. The serial number was removed to such an extent that Defendant would have noticed and felt the etching anytime he handled or possessed the firearm. The Court finds that Defendant knew the manufacturer's and importer's serial number had been removed. The Government has satisfied its burden as to the fourth element.

The Court finds Defendant Guilty of Count IV – Possession of a Firearm with Obliterated Serial Number. The Government has satisfied its burden to prove the crime of possession of a firearm with obliterated serial number beyond a reasonable doubt.

## V.     Count V – Illegal Entry into the United States

Based on the evidence presented, the Court finds Defendant is guilty beyond a reasonable doubt of Count V – Illegal Entry into the United States in Violation of 8 U.S.C. § 1325(a). To be guilty of the crime of illegal entry into the United States the Government must prove beyond a reasonable doubt that: (1) defendant was an alien illegally or unlawfully in the United States; and (2) did knowingly and illegally enter the United States.

The Court finds that Defendant was an alien illegally or unlawfully in the United States and knowing and illegally entered the United States. The parties stipulated that prior to and on May 11, 2023, the Defendant knew he was an alien (meaning that he was not a citizen or national of the United States), that he had knowingly entered the United States at a place other than a designated port of entry, and that he was illegally and unlawfully present in the United States. (Government's Exhibit 41).

The Court finds Defendant Guilty of Count V – Illegal Entry into the United States. The Government has satisfied its burden to prove the crime of illegal entry into the United States beyond a reasonable doubt.

## JUDGMENT

Accordingly, for the reasons set forth herein and consistent with this Court's findings, the Court finds Defendant guilty beyond a reasonable doubt on Count I – Possession of a Schedule II Controlled Substance with Intent to Distribute; Count II – Possession of a Firearm in Furtherance of a Drug Trafficking Crime; Count III – Possession of a Firearm by an Illegal Alien; Count IV –

Possession of a Firearm with Obliterated Serial Number; and Count V – Illegal Entry into the United States.

It is **ORDERED** that Defendant remain in custody until sentencing. It is also **FURTHER ORDERED** that the United States Probation Office prepare a presentence investigation report.

**IT IS SO ORDERED.**

DATED:  June 23, 2025

_/s/ Douglas Harpool_
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**
